IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:07CR171 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| HUGO GABRIEL GAVINO-CARDONA and | ) | RECOMMENDATION |
| JOSE ANTONIO OCHOA-GUZMAN, | ) | |
| | ) | and ORDER |
| Defendants. | ) | |

This matter is before the court on the motions to suppress filed by defendant Hugo Gabriel Gavino-Cardona (Gavino-Cardona) (Filing No. 22) and by defendant Jose Antonio Ochoa-Guzman (Ochoa-Guzman) (Filing No. 24), and on the motion to sever (Filing No. 25) by Ochoa-Guzman. Gavino-Cardona and Ochoa-Guzman are charged in the Indictment with a conspiracy to distribute and possess with intent to distribute more than 100 kilograms of marihuana (Count I) in violation of 21 U.S.C. § 846 and with the possession with intent to distribute more than 100 kilograms of marihuana (Count II) in violation of 21 U.S.C. § 841(a)(1). Gavino-Cardona is also charged in Count III with a violation of 8 U.S.C. § 1326(a) as being an alien who had previously been convicted of an aggravated felony and deported from the United States with being found in the District of Nebraska after having unlawfully reentered the United States.

Both defendants seek to suppress evidence obtained by the Cozad Police Department (CPD), the Dawson County Sheriff's Office (DCSO), and the Nebraska State Patrol (NSP) on April 21, 2007, following the arrest of Gavino-Cardona and Ochoa-Guzman at a motel in Cozad, Nebraska. Ochoa-Guzman also seeks to sever the trial of his charges from that of his co-defendant, Gavino-Cardona. An evidentiary hearing was held on the motions on July 13, 2007. Gavino-Cardona was present in person with his counsel, Assistant Federal Public Defender Julie B. Hansen. Ochoa-Guzman was present with his counsel, Michael J. Lehan. The government was represented by Assistant U.S. Attorney Kimberly C. Bunjer. Laura Garcia-Hein and Berta Biritos, certified interpreters in the Spanish language, served as interpreters. Also, Dr. Jeck Naverrete, a Spanish Language

interpreter for the Office of the Federal Public Defender, was present during the hearing. During the hearing, the court heard the testimony of Officer Bill Jacobson (Officer Jacobson) and Sergeant Randy Adams (Sergeant Adams) of the CPD, DCSO Deputy Steve Molden (Deputy Molden), and NSP Investigator Cheryl A. Wilson (Investigator Wilson).  The court also received into evidence a CPD Miranda Warning (Exhibit 1) and a NSP Report of Interview (Exhibit 101).  A transcript of the hearing (TR.) was filed on July 24, 2007 (Filing No. 33).

## FINDINGS OF FACT

Around 2:00 a.m. on April 21, 2007, the Cozad Police Department received a 911 call from the Roadway Inn in Cozad, Nebraska, regarding some suspicious activity at the motel (TR. 4).  Cozad, a small rural area town, is located adjacent to Interstate 80 (TR. 15). The call came from Ms. Kreitz, a desk clerk at the Roadway Inn (TR. 4).  Officer Jacobson, who was on duty, responded to the call by going to the motel (TR. 4).  There he met with Ms. Kreitz whom Officer Jacobson had known from the past when both of them were employed by the Dawson County Sheriff's Office (TR. 5).  Ms. Kreitz told Officer Jacobson that two Hispanic males checked into the motel around 1:30 a.m. and drove an Illinois plated vehicle (TR. 5, 16).  One of the Hispanic males checked in at the front desk and presented an Arizona driver's license in the name of Mateo Alvarez (TR. 5-6).  Ms. Kreitz described the man as being very nervous and adamant about getting a room with an outside access (TR. 5).  When Ms. Kreitz told the man the motel had no such rooms since the motel had inside hallways, the man settled for a room from which he could see his vehicle (TR. 5).  Ms. Kreitz told Officer Jacobson both men seemed really nervous and wanted to know when the gas station opened so they could get out of there as quickly as possible (TR. 5)

Officer Jacobson ran a computer check on the license of the two men's vehicle (TR. 6). The check came back as "no record" (TR. 6).  Officer Jacobson explained the response could have meant there was something wrong with the computer and the response was not of great significance (TR. 6).  Officer Jacobson did not have a date of birth for Alvarez (TR. 6).  Officer Jacobson had Ms. Kreitz call the motel room and ask for Alvarez's date of birth

(TR. 18). Ms. Kreitz did so and obtained a date of birth from Alvarez (TR. 18). Officer Jacobson then ran a computer check for wants and warrants on the name Alvarez used to check into at the motel (TR. 6). The computer check came back with an active warrant from Arizona for forgery for Mateo Alvarez (TR. 7). Officer Jacobson, using his cell phone, contacted his sergeant, Sergeant Adams, and Deputy Molden (TR. 7). Officer Jacobson told the other officers there was a subject at the motel who had an outstanding arrest warrant from Arizona and asked for the officers' assistance (TR. 7).

When Sergeant Adams and Deputy Molden arrived at the motel, Sergeant Adams and Officer Jacobson went to the door of the motel room and Deputy Molden stationed himself outside of the window of the room (TR. 7). Sergeant Adams knocked on the motel room door and announced "Police Department" (TR. 77). There was no immediate response although the officers could hear some movement inside (TR. 8). When Sergeant Adams again knocked on the door and announced his presence, the door opened partway with a security chain on the door (TR. 52). The person who answered the door mumbled something the officers could not understand (TR. 8; 52). At the same time, Sergeant Adams and Officer Jacobson heard a crash as if glass was breaking from within the room (TR. 8; 52). The officers drew their weapons and forced their way into the room, subdued and handcuffed the man who opened the door, defendant Ochoa-Guzman (TR. 8; 20; 52). The window to the motel room was smashed, and the other male subject, defendant Gavino-Cardona, had jumped through the window head first and rolled on the ground by Deputy Molden (TR. 38). Gavino-Cardona appeared to be attempting to stand up and run, but Deputy Molden commanded Gavino-Cardona to stay on the ground (TR. 38).

Once Ochoa-Guzman was under control in the motel room, Sergeant Adams directed Officer Jacobson to go outside and assist Deputy Molden with the other suspect (TR. 52). Sergeant Adams searched Ochoa-Guzman and found a wallet containing a Mexican driver's license in the name of Martel Montano and a piece of paper that appeared to be an Indian decree stating the name of Mateo Alvarez (TR. 52). Sergeant Adams also found a couple of cell phones on Ochoa-Guzman (TR. 52). Sergeant Adams walked Ochoa-Guzman outside to the other officers (TR. 52). Meanwhile, Officer Jacobson went outside and assisted Deputy Molden in handcuffing Gavino-Cardona (TR. 9-10). Officer

Jacobson searched Gavino-Cardona's pockets and found a set of car keys to the vehicle outside, a gold Chrysler Concorde (TR. 11-12). When asked his name, Gavino-Cardona gave his name as Jesus Robledo (TR. 11). Gavino-Cardona was then seated in Officer Jacobson's patrol car at the scene (TR. 11).

Deputy Molden is a certified police service dog handler (TR. 35). He and his canine, Noska, have been trained and certified by the Nebraska State Patrol (TR. 35). Noska is trained and certified as a narcotics detection canine (TR. 35). Deputy Molden's and Noska's certification were current at the time of the incident at the Roadway Inn on April 21, 2007 (TR. 36).

After Gavino-Cardona was placed in the patrol car, Deputy Molden removed Noska from Deputy Molden's patrol vehicle and conducted a canine sniff of the Chrysler Concorde (TR. 39). Noska indicated positively for narcotics at the trunk area of the Chrysler Concorde and so informed Officer Jacobson of Noska's indication(TR. 116). Deputy Molden returned Noska to Deputy Molden's patrol vehicle (TR. 40). While Gavino-Cardona was sitting in Officer Jacobson's patrol vehicle, Deputy Molden asked Gavino-Cardona if the officers could search the Chrysler Concorde (TR. 12; 39-40). Gavino-Cardona told Deputy Molden "Go ahead, you're going to anyway" (TR. 12; 39-40). Officer Jacobson again asked Gavino-Cardona if the officers could search the vehicle and Gavino-Cardona told Officer Jacobson to go ahead and search (TR. 12). Officer Jacobson used the keys obtained from Gavino-Cardona, pushed the keyless remote for the trunk release, and searched the trunk of the Chrysler Concorde (TR. 40). In the trunk area the officers found bundles of marihuana wrapped in cellophane (TR. 13).

Both Gavino-Cardona and Ochoa-Guzman were transported to the Cozad Police Department where they were separated and held in different rooms (TR. 13). Sergeant Adams drove the Chrysler Concorde to the Cozad Police Department where 19 bundles of marihuana were removed from the vehicle (TR. 40; 54). Sergeant Adams contacted the Nebraska State Patrol for the assistance of an investigator in the event the NSP wanted to follow the marihuana load to its destination (TR. 56). Gavino-Cardona, still maintaining that his name was Jesus Robledo, was placed in the booking room where Sergeant Adams and Officer Jacobson conducted an interview (TR. 54). Sergeant Adams used a ***Miranda***

warning form and advised Gavino-Cardona of his *Miranda* rights (TR. 55; Exhibit 1). Sergeant Adams conducted the interview in English and Gavino-Cardona appeared to understand Sergeant Adams by responding to Sergeant Adams's questions in English (TR. 55). Gavino-Cardona did not request a Spanish language interpreter to be present (TR. 55).

NSP Investigator Wilson was in Gothenburg, Nebraska, on April 21, 2007 (TR. 83). She received an assignment from her supervisor to go to Cozad, Nebraska, to assist the local officers in the interviews of the subjects and to determine if there could be a controlled delivery to Chicago (TR. 83). After receiving the call, it took Investigator Wilson twenty minutes to drive to Cozad (TR. 83). Upon arrival in Cozad, Investigator Wilson met with the officers involved in the arrest and re-interviewed Gavino-Cardona (TR. 84). Investigator Wilson reviewed the *Miranda* warning given previously by Sergeant Adams and told Gavino-Cardona he could stop the interview at any time (TR. 84). Investigator Wilson conducted the interview in English and asked Gavino-Cardona if he was able to understand her and converse with her in English (TR. 84). Gavino-Cardona stated he understood her and did not need a Spanish language interpreter (TR. 84). During the interview Gavino-Cardona admitted the name he was using, Jesus Robledo, was not his true name (TR. 88). Gavino-Cardona provided Investigator Wilson with a detailed account of being provided with the Chrysler Concorde in Phoenix, Arizona, and being paid to drive the marihuana to Chicago, Illinois (Exhibit 101). Gavino-Cardona stated he traveled with Ochoa-Guzman who he knew as "Runi," and that "Runi" had the cell phones and knew where to go when they reached Chicago (Exhibit 101). Investigator Wilson's interview ended shortly thereafter when Gavino-Cardona did not want to continue with the interview (TR. 89). Thereafter, Investigator Wilson attempted to interview Ochoa-Guzman who was using the name of Martel Montano (TR. 87). Ochoa-Guzman declined to be interviewed (TR. 87).

## LEGAL ANALYSIS
### Motions to Suppress

The defendants had the misfortune of assuming the identity of Mateo Alvarez who had an outstanding warrant for his arrest from Arizona. They compounded their

predicament when they provided Alvarez's date of birth to the motel desk clerk. With such information, Officer Jacobson was able to determine Mateo Alvarez was a fugitive from Arizona with an outstanding arrest warrant. There has been no challenge to the validity or existence of such an arrest warrant. The police officers, possessed with such information, were legally justified to go to the motel room to effect the arrest of the person they reasonably believed to be Mateo Alvarez. **Payton v. New York**, 445 U.S. 573 (1980). The officers were also legally justified to force their way into the room after hearing someone crash through the motel room's window. Once inside the room, the officers were legally justified in detaining Ochoa-Guzman and removing him from the room. The officers were legally justified in detaining Gavino-Cardona after he crashed through the motel window and rolled to ground near Deputy Molden. The officers' actions were permissible under the Fourth Amendment and were supported by a reasonable articulable suspicion of criminal activity. **Terry v. Ohio**, 392 U.S. 1 (1968). Such criminal activity being: fugitive from an outstanding arrest warrant, harboring a fugitive, flight to avoid arrest, and destruction of motel property. Furthermore, the officers had probable cause to arrest either one of the defendants as Mateo Alvarez on the Arizona warrant and the other defendant for harboring a fugitive.

Upon their detention, the officers were legally justified in searching the persons of each defendant, removing the cell phones and wallet from Ochoa-Guzman, and taking the car keys from Gavino-Cardona. **Chimel v. California**, 395 U.S. 752 (1969).

The canine sniff of the vehicle by Noska did not constitute a "search" within the meaning of the Fourth Amendment.

> [A] canine sniff of the exterior of personal property in a public location "is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure" that it does not constitute a "search" within the meaning of the Fourth Amendment. **United States v. Place**, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed.2d 110 (1983) (luggage at an airport). That principle applies to the canine sniff of the exterior of [a] trailer stopped along an interstate highway. In general, "[t]he exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a 'search.'" **New York v. Class**, 475 U.S. 106, 114, 106 S. Ct. 960, 89 L. Ed.2d 81 (1986).

6

***United States v. $404,905.00 in U.S. Currency***, 182 F.3d 643, 647 (8th Cir. 1999). Furthermore, a police service dog's alert to the odor of drugs in a vehicle provides probable cause that drugs are present.  ***Place***, 462 U.S. at 706; ***United States v. Bloomfield,*** 40 F.3d 910, 919 (8th Cir. 1994), **cert. denied,** 514 U.S. 1113 (1995).  After probable cause is established, a car can be searched without a warrant under the automobile exception to the warrant requirement. ***Chambers v. Maroney***, 399 U.S. 42, 52 (1970).

Further, Gavino-Cardona consented to the search of the automobile. While Gavino-Cardona expressed his belief that the police officers were going to search the automobile anyway, Gavino-Cardona twice told the officers to "go ahead and search the automobile" when the officers asked Gavino-Cardona to search the automobile.  A consent search must be voluntary.  "A search may be constitutionally valid either where it is supported by a reasonable suspicion or by valid consent." ***United States v. Morris***, 910 F. Supp. 1428, 1446 (N.D. Iowa 1995) (internal citations omitted).  "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." ***Id.*** (internal citations omitted).  The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." ***Ohio v. Robinette,*** 519 U.S. 33, 40 (1996).  While Gavino-Cardona was handcuffed following his rolling to the ground after crashing through the motel window, the officers did not threaten or coerce Gavino-Cardeona to consent to the search of the automobile.  After consideration of the totality of the circumstances, the court finds Gavino-Cardona's consent to search the automobile to have been voluntarily given.  **See *United States v. Saenz***, 474 F.3d 1132, 1137 (8th Cir. 2007).

Consequently, either on the basis of the probable cause supplied by Noska's indication that controlled substances were present in the automobile or on the basis of Gavino-Cardona's consent to search the automobile, the search of the Chrysler Concorde was justified under the Fourth Amendment.  The discovery of the packaged marihuana constituted probable cause to the arrest of both defendants for possession with intent to distribute controlled substances.

Following their arrests, both defendants were taken to the Cozad Police Department and interrogated.  Conversations with both defendants were conducted in the

7

English language and neither defendant requested a Spanish language interpreter. The officers who interrogated the defendants testified that both defendants appeared to understand the English language and were able to respond appropriately to questions asked in English. While both defendants seek to suppress any statements they may have made, the defendants base their motions on the assertions that their detention, arrest, and search of the automobile were without legal justification. Having found no such infirmity in these issues, there is no basis for suppression under **Wong Sun v. United States**, 371 U.S. 471 (1963).

Further, the court finds the statements made by Gavino-Guzman were voluntary. The touchstone for the admissibility of a defendant's statements is voluntariness. **Brown v. Mississippi**, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. **Mincey v. Arizona**, 437 U.S. 385 (1978); **Colorado v. Connelly**, 479 U.S. 157 (1986); **Schneckloth v. Bustamonte**, 412 U.S. 218 (1973). In this case, Gavino-Cardona was advised of his constitutional rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). There is no evidence he did not understand the advice of rights. In fact, Gavino-Cardona invoked those rights later in the interrogation. Under all the circumstances, the court finds the defendants' motions to suppress their statements to be without merit.

### Motion to Sever

Ochoa-Guzman moves to sever his trial from Gavino-Cardona on the basis that the government would attempt to introduce an alleged statement by Gavino-Cardona which implicates Ochoa-Guzman. Ochoa-Guzman asserts such use of the statement would violate the precepts of **Bruton v. United States**, 391 U.S. 123 (1968). During the hearing on July 13, 2007, government's counsel essentially conceded the defendants should be tried separately (TR. 114). The concession is appropriate since the Supreme Court has held: "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." **Cruz**

*v. New York*, 481 U.S. 186, 193 (1987).  Accordingly, the defendants' motions to sever will be granted.

### IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:

1. Gavino-Cardona's motion to suppress (Filing No. 22) be denied.
2. Ochoa-Guzman's motion to suppress (Filing No. 24) be denied.

### IT IS ORDERED:

1. Ochoa-Guzman's motion to sever (Filing No. 25) is granted.
2. The trial of the Indictment against Ochoa-Guzman will be separate from that of Gavino-Cardona.

### ADMONITION

Pursuant to NECrimR 57.2 and 57.3 any appeal of this Order or objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Order and Report and Recommendation.  Failure to timely appeal or object may constitute a waiver of any such appeal or objection.  The brief in support of any appeal or objection shall be filed at the time of filing such appeal or objection.  Failure to file a brief in support of any appeal or objection may be deemed an abandonment of the appeal or objection.

DATED this 27th day of August, 2007.

BY THE COURT:

s/Thomas D. Thalken  
United States Magistrate Judge